**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Joshua R. Wilner (State Bar No. 353949)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        jvenditti@bursor.com
        jwilner@bursor.com
        jglatt@bursor.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS IONESCU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZENCHI, INC. d/b/a ELIX HEALING,<br><br>Defendant. | Case No.   2:25-cv-1268<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Nicholas Ionescu ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Zenchi, Inc. d/b/a Elix Healing ("Defendant" or "Elix").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## **NATURE OF THE ACTION**

1.      This is a class action lawsuit brought against Defendant for aiding and employing a third party—Pickzen—to wiretap, in real time, the sensitive answers to Defendant's medical quiz on its Website.

2.      Specifically, Defendant owns and operates the website elixhealing.com (the "Elix Website").  The Elix Website offers consumers personalized herbal health treatments.  To receive a personalized herbal remedy recommendation for purchase, the user must first take a quiz called "Discover My Formula" on the Elix Website.

3.      The quiz features a combination of click-boxes and short answer questions that seek the respondent's personal medical information, including symptoms and previous medications taken.  In addition, prior to completing the quiz, but before a remedy is suggested, the user is directed to provide their name, phone number, email address, and age range for personalized product recommendations.

4.      Every answer to the quiz is surreptitiously and intercepted in real time by Pickzen to guide the Pickzen technology (as discussed in greater detail below, *see infra*).  Pickzen is a separate and distinct third-party entity from the parties to these communications (*i.e.*, Defendant, as the entity offering the survey, and Plaintiff and similarly situated consumers who responded to the survey prompts on the Elix Website).  However, Pickzen allows the website host to customize the Pickzen quiz to blend into the website with similar trade dress and coloring to appear as though the quiz is part of Defendant's Website.  In reality, the communications input into

the quiz are surreptitiously intercepted, stored and aggregated by Pickzen and used by Pickzen for its own business purposes.

5.      Plaintiff is a California citizen and resident who completed Defendant's "Discover My Formula" quiz through the Elix Website while in California and who, in the course of taking that quiz, input sensitive medical and personally identifying information that was intercepted in real time by Pickzen, the third party that Elix aided and employed to wiretap on its Website.  Plaintiff was not informed at any point that a third party would have access to or collect and store the information he provided to Defendant in connection with "Discover My Formula" quiz.  Instead, Plaintiff reasonably believed that this personal information was only being shared with Defendant who needed it to provide a proper recommendation.

6.      At no point is any user of the quiz, like Plaintiff, appraised of the wiretapping, nor provided an opportunity to consent to it.

7.      Crucially, neither Defendant nor Pickzen procured the consent of any person who interacted with the quiz featured on the Elix Website prior to Pickzen recording, accessing, reading, and learning the contents of Californians users' communications to Defendant through the quiz.  This is despite Pickzen having the capability to use the contents of those communications for purposes other than simply providing a copy to Defendant.

8.      Accordingly, Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages from Defendant for failing to comply with the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a).

## PARTIES

9.      Plaintiff Nicholas Ionescu is a citizen of California, residing in La Crescenta, California.  In December 2024, Plaintiff completed the "Discover My Formula" quiz on the Elix Website from his computer in California.  In the course of doing so, Plaintiff provided personally identifying information along with sensitive,

medical information in response to the quiz questions.  As discussed in further detail below, those answers were intercepted as they were entered into the Elix Website by Pickzen, a third-party which Defendant aided, agreed with, and employed to surreptitiously intercept that information to use for marketing, advertising, and analytics purposes.  Plaintiff did not consent to—nor was he ever made aware of—the surreptitious interception and use of this personal information by a third-party.

10. Defendant Zenchi, Inc. d/b/a Elix Healing is a New York corporation with its principal place of business located in New York, New York.  At all times relevant to the allegations herein, Defendant has developed, manufactured, advertised, marketed, sold, and/or distributed Elix-branded personalized clinically-backed herbal remedies for women's hormonal health to consumers in California and throughout the United States.  Defendant sells its herbal remedy products in California and has transacted in and throughout California and throughout the United States at all times during the Class Period.  In addition, at all relevant times herein, Defendant has owned, operated, and controlled the Elix Website, where it, *inter alia*, markets and sells the herbal remedy products.  Relevant to Plaintiff's claims herein, Defendant has, at all relevant times, offered a "Discover My Formula" quiz to consumers through the Elix Website, whereby consumers must, in the course of taking that quiz, input sensitive medical and personally identifying information in order to receive a personalized herbal remedy recommendation for purchase from Defendant.  At all relevant times, acting alone or in concert with others, Defendant formulated, directed, controlled, had the authority to control, and/or participated in the acts and practices set forth in this Complaint.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there

1   are more than 100 class members, and at least one member of the proposed class is a

2   citizen of a state different from Defendant.

3         12.    This Court has personal jurisdiction over Defendant because Defendant

4   has, at all times relevant hereto, systematically and continually conducted, and

5   continues to conduct, business in California, including within this District.  Indeed,

6   all relevant times, Defendant has targeted the California consumer market by, *inter*

7   *alia*, deliberately marketing, advertising, selling, and distributing its herbal remedy

8   products to consumers in California.  Defendant has therefore intentionally availed

9   itself of the benefits and privileges of the California consumer market through the

10  promotion, marketing, and sale of its products and/or services to residents within

11  California, including within this District, such that it should reasonably expect to be

12  brought into court in this State and District as a result of its activities here.

13        13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)

14  because a substantial portion of the events, omissions, and acts giving rise to

15  Plaintiff's claims occurred in this District.  Moreover, Defendant systematically

16  conducts business in this District and throughout the State of California, and Plaintiff

17  resides in this District.

## FACTUAL ALLEGATIONS

**I.     Background On The California Invasion Of Privacy Act ("CIPA")**

20        14.    The California Legislature enacted the CIPA to protect certain privacy

21  rights of California citizens.  The California Legislature expressly recognized that

22  "the development of new devices and techniques for the purpose of eavesdropping

23  upon private communications … has created a serious threat to the free exercise of

24  personal liberties and cannot be tolerated in a free and civilized society."  Cal. Pen.

25  Code § 630.

26        15.    As the California Supreme Court has held in explaining the legislative

27  purpose behind CIPA:

28

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—*the right to control the nature and extent of the firsthand dissemination of his statements.*

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

16.    As part of CIPA, the California Legislature enacted § 631(a), which prohibits, in relevant part, any person or entity from: (1) "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any . . . communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]"; or (2) "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]" Cal. Pen. Code § 631(a).

17.    CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned violations, or those who "permit" the violations.  Cal. Pen. Code § 631(a).

18.    Notably, CIPA § 631(a)'s applicability is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email.  *See Matera v. Google, Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."); *In re Facebook, Inc. Internet*

*Tracking Litig.,* 956 F. 3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of internet browsing history).

19.    Crucially here, CIPA § 631(a) requires consent to an interception to occur *before* the interception itself occurs, not after.  *Javier*, 2022 WL 1744107, at *2 ("[W]e conclude that the California Supreme Court would interpret Section 631(a) to require the prior consent of all parties to a communication."); *see also Ribas*, 38 Cal. 3d at 361 ("The Privacy Act has been read to require the assent of all parties to a communication *before another may listen*.") (emphasis added).

20.    Individuals may bring an action against the violator of any provision of the CIPA for $5,000 per violation.  *See* Cal. Pen. Code § 637.2(a)(1).  Plaintiff does so, here, against Defendant.

**II.    Defendant Violates The CIPA**

21.    When a user visits the Elix Website, they are presented the following screen prominently inviting them to take a quiz in order "Discover [Their] Formula" (red marking added for emphasis):



22.     When the user clicks the "Discovery My Formula" button, the quiz commences and the user is directed to answer a series of questions concerning their personal health needs.  These questions seek information about, *inter alia*, their menstrual cycles, associated pain and cramping, frequencies, medication taken to address discomfort, what birth control the user takes, changes in emotions, severity of symptoms, bloating issues, and a host of other personal and medical questions.

23.     At the conclusion of the quiz, the user is directed to provide their name, phone number, and email address, as shown in the screen shots below:





24.     All questions of Defendant's quiz that ask about the user's medical history and other sensitive and/or personally identifying information are presented, and the user's responses are input, before the user is appraised of the existences of

any trackers that Defendant or third parties employ to aid in intercepting the sensitive medical and person user information elicited.  After completing the quiz, the user is presented with their results and provided with treatment recommendations and related purchase offers based on their answers.

25.    In fact, at no point during any part of the process are Plaintiff and putative Class Members informed that a third party is surreptitiously intercepting their answers in real time.

26.    Nevertheless, that is exactly what happens when users completes the "Discovery My Formula" quiz on the Elix Website.  Defendant aids, agrees with, and employs third-party tracker with respect to its quiz that, contemporaneous to the user's selecting each answer, collects and records those answers.  That third-party is Pickzen.

## III.    Pickzen's Interception Of Communications On The Elix Website

### A.    About Pickzen

27.    Pickzen, a business-to-business Software-as-a-Service platform ("SaaS"), That website owners can contract with on an annual basis for an annual fee.[1]  Pickzen is a quiz-building service that supports a website's online quiz.[2]

28.    Pickzen describes itself as a service that "helps eCommerce customers find the right product at the right time, just like a store associate does in traditional shopping.  Guided by Pickzen from start to cart, customers receive personalized product recommendations after answering a short series of questions."[3]  Specifically, Pickzen provides the website with an "AI-[p]owered quiz[.]"[4]

---

[1] Republic.com, *Pickzen*, *available at* https://republic.com/pickzen.

[2] Pickzen, *Builder Overview*, *available at* https://help.pickzen.com/create/editor-overview.

[3] Pickzen, *FAQ*, *available at* https://help.pickzen.com/.

[4] https://www.pickzen.com/.

29.     However, Pickzen does not merely provide the website that employs the third-party with the user's answers.  Nor does Pickzen merely use its AI quiz tool to suggest what product to buy based on the user's answer.  Instead, Pickzen is capable of using, and does in fact use, the data a user inputs into the quiz for its own purposes.

30.     When a website owner is looking to install Pickzen on its website, it builds a quiz through the Pickzen Quiz-Builder platform.  The Quiz Builder template presents the user with an empty template where the user can customize the name of the quiz, the questions, and the order they're presented.



31.     The Quiz Builder template is fully customizable.  The website owner— *i.e.*, Elix, can create a quiz that blends into the website with identical color schemes, trade dress, and language.  With this customization, a website user would not be able to tell that they're interacting with Pickzen and not the website.[5]

---

[5] Pickzen, *Display Settings*, *available at* https://help.pickzen.com/create/creating-questions/setting-the-font.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32.    The website owner also selects the number of outcomes that the quiz can present to the user based on their answers.[6]  The Pickzen AI can then make product recommendations by following a decision making "tree:"



Each of the green colored endpoints in the decision tree shown above represents a recommended product:



33.    The website owner assigns various products to various "end nodes."[7] This tree encapsulates Pickzen's "guided selling experience."[8]

---

[6] Pickzen, *Number of Outcomes*, *available at* https://help.pickzen.com/create/creating-questions/end-slide-layouts/number-of-outcomes.

[7] Pickzen, *Linking*, *available at* https://help.pickzen.com/create/linking.

[8] Republic, *supra* note 1.

34.    Once the quiz is operable, the website owner installs the quiz on the website.  They can do so by either (1) launching the quiz as a popup when the consumers click on it; (2) creating a link to the quiz; (3) providing a quiz-specific button (like Elix does here); or (4) embedding the quiz into the content of the website.[9]  By virtue of providing Pickzen with the necessary decision tree options, Pickzen records, monitors, and collected—in real time—the communications input into the quiz to make decisions down the "tree."  In so doing, Pickzen also stores those communications for itself on its own servers.

### B.    Pickzen's Services And Activities On Defendant's Website

35.    Pickzen deploys various tools and software on its merchant partners' websites, including the Elix Website, that facilitate its interception of customer data. For instance, "Pickzen uses cookies to help Pickzen identify and track visitors[ to its partners' websites], their usage of the [] website, and their website access preferences."[10]  In addition, "Pickzen also uses a first-party Google Analytics cookie in order to track usage of Pickzen's websites and to provide a more relevant experience to our users. … Pickzen may use third party analytics services like FullStory, which provide us with a clearer picture of how you use the Websites, such as where you click on the Websites, … text entered into the Websites, and mouse movements."[11]  These tools, along with any other tracking software or devices that Pickzen may deploy on its partners' websites, are collectively referred to herein as the "Services."

---

[9] Pickzen, *Install*, *available at* https://help.pickzen.com/create/install.

[10] Pickzen, *Privacy Policy*, *available at* https://www.pickzen.com/privacy-policy; *see also id.* ("A cookie is a string of information that a website stores on a visitor's computer, and that the visitor's browser provides to the website each time the visitor returns.").

[11] *Id.*

---

36.     Through the Services, Pickzen collects, stores, and maintains the sensitive data of its partners' customers, as provided by those customers to Pickzen's partners through the partners' websites.  Additionally, as Pickzen explains in its Privacy Policy, it processes (*i.e.*, reads and analyzes) its "partners' customers['] … information … on behalf of [its] merchants," including Defendant here.[12]  Pickzen's Privacy Policy further explains: "Once you stop using our services us, we generally will **continue to store archived copies of your personal information for legitimate business purposes** …."[13]  For instance, Pickzen "process[es customers'] personal data to pursue [various] legitimate interests, either for [itself], [its] partners, or other third parties," including, *inter alia*, "[t]o provide partners and others with [its] services[;] … [t]o provide communications, marketing, and advertising[;] … [t]o provide reporting and analytics[;] … [t]o test out features or additional services[;] … [and t]o improve [Pickzen's] services, applications, and websites[.]"[14]  Pickzen also "discloses potentially personally-identifying and personally-identifying information [] to … its employees, contractors and affiliated organizations … to provide services available at Pickzen's websites."[15]

37.     Further, with consumers' archived information, Pickzen is able to aggregate data about the user from various sources: "Pickzen may contact or market to your customers if we obtain their information from another source, such as from the customers themselves."[16]  With the ability to aggregate profiles on users—such as Plaintiff and similarly situated individuals who provided sensitive medical and personal information to Defendant through the Elix Website under the reasonable,

---

[12] *Id.*

[13] *Id.* (emphasis added)

[14] *Id.*

[15] *Id.*

[16] *Id.*

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    12

but mistaken, belief that the information would only be shared with Defendant—Pickzen can improve the value of its pitch to prospective new clients by noting the robust dossiers on consumers it surreptitiously builds as this image on Pickzen's website boasts:



38.    For example, and as shown by the image above taken from Pickzen's website, by collecting a user's answers to questions about medicinal needs, Pickzen is capable of using that information to pitch its products and services, including the Services at issue herein, to potential new partner websites (*i.e.,* unaffiliated third-

party merchants) in order attract new business catering to such merchants' visitors and unique needs.

39.    Not only is Pickzen *capable* of using consumer data in this way, according to its Privacy Policy, in practice, this is exactly how it uses the intercepted consumer data (among other purposes):

> Pickzen discloses potentially personally-identifying and personally-identifying information [] to those of its employees, contractors and affiliated organizations … **to provide services available at Pickzen's websites**[.] …

> [W]e are generally processing your information in order to fulfill contracts we might have with you, **or otherwise to pursue our legitimate business interests** …. **In particular we process your personal data to pursue the following legitimate interests, either for ourselves, our partners, or other third parties** (including our partners' customers):

> - **To provide partners and others with our services**
> - To prevent risk and fraud on our platform
> - **To provide communications, marketing, and advertising**
> - **To provide reporting and analytics**
> - To provide troubleshooting, support services, or to answer questions
> - **To test out features or additional services**
> - **To improve our services, applications, and websites**[17]

40.    Put simply, Pickzen uses the data it collects for its own professional benefit (*i.e.*, for purposes other than servicing Defendant).  By collecting and storing the communications a user provides to its quizzes, Pickzen can, *inter alia*, aggregate more data about an individual which it can use to improve its product offerings to new partner websites.  With more information about specific members of the consumer market, Pickzen can better assist the partner-website in suggesting products a user is more likely to buy.

---

[17] *Id.* (emphasis added).

41.    In fact, Pickzen even promises prospective website partners that installing it on their website will bring them "100% higher conversion[s]."



42.    By using Pickzen's Services to track consumers' responses to the "Discover My Formula" quiz on the Elix Website, and by allowing Pickzen, through its Services, to collect and store consumers' communications to Defendant, Defendant aides and employs this third party to surreptitiously intercept the answers that visitors to the Elix Website provide Defendant while taking the quiz.

43.    For example, when the quiz asks "What Brings You To Elix?" (in pink) the user's answer (in green) is—in real time—intercepted by Pickzen as the user selects their answer choice:



44.    This remains the case throughout the quiz. For example, when the quiz asks if the user is "currently taking any medications" (in pink), Pickzen collects that answer (in green):

{\"type\":\"info\",\"slideId\":133,\"options\":[{\"response\":259,\"title\":\"Diuretics\"}],\"title\":\"CH 3 Â· ARE YOU CURRENTLY TAKING ANY MEDICATIONS?\"},{\"type\":\"info\",\"slideId\":189,\"options\":[]},{\"type\":\"info\",\"slideId\":134,\"options\":[{

45.     At the end of the quiz, when the user is required to provide their name, age range, email address, and phone number, Pickzen, in real time, surreptitiously intercepts and collects this information as well—as aided and employed by Defendant.



\"$first_name\":\"Tanya\"



\"$email\":\"▮▮▮▮▮@gmail.com\",\"$phone_number\":\"▮▮▮▮▮\"}

46.     During each event, the answers to the quizzes are intercepted as users enter the information into the quiz (*i.e.,* in real time), without providing the user with

any notice that Defendant has aided and employed Pickzen, the third party, to intercept a user's answers from its Website.

47.     Pickzen's Services also allow Elix to directly target the user—*i.e.,* Plaintiff and Class Members—with personalized recommendations as to what they should buy while simultaneously allowing Pickzen to aggregate users' data to boost its own business.

48.     By aiding and employing Pickzen's wiretapping of and/or surreptitious interception of consumer data through the Elix Website, Pickzen reads or attempts to read the substance and contents of the communications between Plaintiff and Class Members and Defendant.

49.     Thus, the agreement for Defendant to aid in Pickzen's wiretapping of Plaintiff's and Class Members' personal responses to the quiz questions is done for the purpose of improperly increasing the advertising and sales efficiency and, by extension, profits of both parties

## IV.    Plaintiff's Experience

50.     In or about December 2024, Plaintiff took the "Discover My Formula" quiz on the Elix Website, which Plaintiff accessed via a web browser while in California.

51.     Plaintiff answered each and every health and medical question presented during the quiz, providing Elix with specific information about his medical condition, symptoms, and treatment.  Plaintiff also provided his name, email, age range, and phone number to receive a product recommendation at the end of the quiz.  Following completion of the quiz and receipt of a personalized product recommendation from Defendant, Plaintiff purchased the product that was recommended based on the specific symptoms and information he provided in response to quiz questions eliciting such information.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                           17

52.     Unbeknownst to Plaintiff, through the Services, Pickzen intercepted, viewed, and processed each and every one of Plaintiff's communications with the Elix Website and quiz responses, and it used that information for data analytics and user profile building for which it can use to market to prospective partner websites.

53.     Pickzen's interception of the electronic communications begins at or prior to the moment a user starts entering requested information into the quiz's form filler on the Elix Website—prior to being provided notice of or any opportunity to consent to Defendant's privacy policy or the Elix Website's terms of services generally.  Further, at no point are users informed—prior to being wiretapped or otherwise—that their electronic communications are being simultaneously directed to Pickzen, rather than only Defendant.

54.     Plaintiff was not on notice of any wiretapping when Plaintiff entered information into the quiz via answers to the questions presented, nor did Plaintiff provide prior consent to the same.

55.     While taking the quiz on the Elix Website, Plaintiff reasonably expected his quiz responses and other communications to Defendant through the Elix Website to be only between himself and Defendant.  Plaintiff was not aware, nor did he have any reason to suspect, that his quiz responses were being viewed, collected, and stored by a third party, Pickzen, rather than just Defendant.  He did not expect or have any reason to expect that Pickzen, a third party, was intercepting his communications.

56.     Nonetheless, upon accessing the quiz, Pickzen, through its Services on the Elix Website, sends the electronic communications directly to Pickzen's servers. Thus, Pickzen, through its Services, intercepted, collected, stored, and used each of Plaintiff's quiz responses, including sensitive personal and medical information that Plaintiff provided to Defendant on the Elix Website during the quiz.

57.     Through this process, Pickzen learned, in real time, the contents of Plaintiff's conversation with Defendant.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    18

58.    Specifically, when Plaintiff used Defendant's quiz on the Elix Website, Pickzen collected Plaintiff's name, age range, phone number, email address as well as the sensitive medical and personal information that Plaintiff provided to Defendant in response to quiz questions requesting the same.

59.    Pickzen is capable of using this information to build a record on a user which it can use to solicit engagements with different partner websites by touting the accuracy of its predications about what any one consumer is likely to buy based on that consumer's previous activity Pickzen has cataloged.  This ultimately boosts Pickzen's revenue while also boosting Defendant's revenue and that of any future partner that contracts with Pickzen to provide targeted, AI-generated marketing.

60.    Pickzen had access to Plaintiff's and the Class Members' communications and personal information entered into the quiz because it contracts with Defendant to hide Pickzen's tracking technology in the quiz on Defendant's Website.

61.    Defendant failed to inform Plaintiff, prior to the wiretapping: (i) that a third party, Pickzen, was accessing and reading Plaintiff's communications with Defendant, (ii) that a third party, Pickzen, was tapping or otherwise making an unauthorized connection with respect to Plaintiff's internet communications using Pickzen's Services, and (iii) that the content of Plaintiff's confidential communications with Defendant were being recorded, collected, intercepted, and analyzed by a third party, Pickzen, using Pickzen's Services.  Defendant therefore failed to procure Plaintiff's consent for the conduct at issue.

62.    Plaintiff did not discover that his communications had been wiretapped until January 2025.

63.    Plaintiff did not provide consent to Defendant to install or use Pickzen's Services while Plaintiff completed the quiz.

64.     Plaintiff has, accordingly, had his privacy invaded and has been exposed to the risks and harmful conditions created by Defendant's violations of CIPA as alleged herein.

## CLASS ALLEGATIONS

65.     **Class Definition.**  Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of himself and a Class of all others similarly situated, defined as:

> All California residents who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, completed the "Discover My Formula" quiz on the Elix Website and had their confidential communications and/or personally identifiable information and answers collected and/or intercepted by a third party.

66.     The following people are excluded from the Class: (i) any Judge presiding over this action and members of his or her family; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliates, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (iii) persons who properly execute and file a timely request for exclusion from the Class; and (iv) the legal representatives, successors, and assigns of any such excluded persons.

67.     Plaintiff reserves the right to amend the definition of the Class if discovery or investigation reveals that the Class should be expanded or otherwise modified, and/or to add additional subclasses as necessary prior to filing a motion for class certification.

68.     **Numerosity.**  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, the Class comprises at least thousands of consumers throughout California, if not millions. Moreover, the Class is ascertainable and identifiable from Defendant's records.  The precise number of Class members and their identities are unknown to Plaintiff at this

time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

69. **Commonality and Predominance.**  There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following: (a) whether Defendant violated CIPA § 631; (b) whether Defendant aided, agreed with, and/or employed third parties, a third party, to collect, read and/or attempt to read, review, and/or record users' communications and activities on the Elix Website; (c) whether Defendant sought or obtained prior consent—express or otherwise—from Plaintiff and the Class to the collection of their information by third parties; (d) whether the information collected is capable of identifying users; and (e) whether Plaintiff and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

70. **Typicality.**  The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class members, is a California resident who used Defendant's "Discover My Formula" quiz and had his sensitive medical and personal information intercepted by a third party, Pickzen, without his prior consent or knowledge.

71. **Adequacy.**  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

72.    **Superiority.**  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION
## COUNT I
### Violation of California's Information Privacy Act
### Cal. Pen. Code § 631(a)

73.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

74.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

75.    CIPA § 631(a) imposes liability for "distinct and mutually independent patters of conduct." *Tavernetti*, 22 Cal. 3d at 192-93.

76.    To establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the

wire, line, cable, or instrument of any internal telephonic communication system,

*Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

Cal. Pen. Code § 631(a).

77.    Pickzen is a third party that provides Defendant with the Services on the Elix Website involving use of a "machine, instrument, contrivance, or … other manner" to engage in the prohibited conduct at issue here.

78.    Pickzen is a "separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Pickzen is a third party to any communications through the Elix Website between Plaintiff and Class Members on the one hand, and Defendant on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023); *Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2024 WL 3875785, at *4 (N.D. Cal. Aug. 16, 2024); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019).

79.    Pickzen is a third party wiretapper because it has the capability to use the contents of conversations it collects through its Services for its own purposes, other than simply furnishing a copy of the communications to Defendant. *Javier*,

2649 F. Supp. 3d at 900; *see also Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *4 (N.D. Cal. Aug. 25, 2023).

80.     At all relevant times, Pickzen, through its Services, violated CIPA § 631(a) by willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading or attempting to read or learn the contents of electronic communications between Plaintiff and Class Members, on the one hand, and Defendant, on the other hand, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

81.     Furthermore, at all relevant times, by contracting for the provision of Pickzen's Services and allowing Pickzen to access and intercept Plaintiff's and Class Members' communications, Defendant CIPA § 631(a) by aiding, agreeing with, employing, permitting, or otherwise enabling Pickzen's unlawful wiretapping.

82.     Defendant failed to inform Plaintiff and Class Members at any point that: (i) a third party, Pickzen, was accessing, storing, and using Plaintiff's communications with Defendant, (ii) a third party, Pickzen, was tapping or otherwise making an unauthorized connection with respect to Plaintiff's internet communications using Pickzen's Services, and (iii) the content of Plaintiff's confidential communications with Defendant were being recorded, collected, intercepted, and analyzed by a third party, Pickzen, using Pickzen's Services. Defendant therefore failed to procure Plaintiff's consent for the conduct at issue.

83.     Accordingly, neither Plaintiff nor any Class Member provided their prior consent to Pickzen's interception of their communications with Defendant, nor did Plaintiff and Class Members consent to Defendant's employment of the same.

84.     Plaintiff and Class Members were in California when they accessed Defendant's Elix Website and had their communications unlawfully intercepted, read, collected, and stored by Pickzen.

85.    Pursuant to Cal. Pen. Code § 637.2, Plaintiff and the Class Members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

a.    For an order certifying the Class under Fed. R. Civ. P. 23, naming Plaintiff as representative of the Class, and appointing Plaintiff's attorneys as Class Counsel to represent the proposed Class;

b.    For an order declaring Defendant's conduct violates the statute referenced herein;

c.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

1

2    Dated:  February 13, 2025            Respectfully submitted,

3                                         **BURSOR & FISHER, P.A**.

4                                         By:   */s/ Julia K. Venditti*
                                                 Julia K. Venditti

5

6                                         L. Timothy Fisher (State Bar No. 191626)
                                          Julia K. Venditti (State Bar No. 332688)
7                                         Joshua R. Wilner (State Bar No. 353949)
                                          Joshua B. Glatt (State Bar No. 354064)
8                                         1990 North California Blvd., 9th Floor
9                                         Walnut Creek, CA 94596
                                          Telephone: (925) 300-4455
10                                        Facsimile:  (925) 407-2700
11                                        E-mail: ltfisher@bursor.com
                                                    jvenditti@bursor.com
12                                                  jwilner@bursor.com
                                                    jglatt@bursor.com
13

14                                        *Attorneys for Plaintiff and the Putative Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28